MICHAEL McKEON, JR., by his next friend, Michael McKeon, Sr., and MICHAEL McKEON, SR., Plaintiffs Below, Appellants, v. LOUIS GOLDSTEIN and SELMA GOLDSTEIN, Defendants Below, Appellees.

(*October* 13, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*H. B. Rubenstein* (of the firm of Leshem and Rubenstein) for plaintiffs below-appellants.

*William Prickett, Jr.* (of the firm of Prickett and Prickett) for defendants below-appellees.

Supreme Court of the State of Delaware, No. 20, 1960.

BRAMHALL, J.:

The questions presented in this case relate to the alleged contributory negligence of the mother of an infant plaintiff and whether such contributory negligence was a proximate cause of the accident.

Defendants on or about September 12, 1955, leased to the parents of the infant plaintiff the first floor apartment at 818 Tatnall Street, Wilmington, Delaware, for a term of one month. They continued to live in the apartment under a lease from month to month for nearly a year. There are two apartments in this building, each of which having a separate heating system consisting of steam or hot water radiation operated by separate coal furnaces. The apartment consisted of a living room, master bedroom, a second bedroom, a kitchen, and a bath. The master bedroom contained a large double bed; the smaller bedroom two cribs for the two small children. At the upper end of the bed in the master bedroom was an exposed steam or hot water pipe which carried heat from the furnace in the basement to the second floor apartment. The pipe was located immediately adjacent to the bed, since this was the only place in the room in which the bed could be placed. It would sometimes become hot enough to burn one coming in contact with it. On one occasion the mother had been so burned.

On March 16, 1956, the infant plaintiff was severely burned by the pipe. The mother had previously noticed that the ceiling in the smaller bedroom appeared to have become soft with water. Fearful that the plaster would fall on her

infant child, whose crib was immediately under the wet plaster, she removed him from the crib and placed him in a large double bed in the master bedroom. It is not entirely clear whether she placed him under the covers of the bed, she having testified under deposition first that she did, and later, on cross-examination, that she did not know. The other child she placed in his pen in the living room.

The mother, after placing the infant plaintiff in the double bed, proceeded to attend to her many other duties about the house. Some time thereafter the father of the infant plaintiff, who was just returning from work, heard the infant crying. Upon entering the room, he discovered the infant lying on the floor in close proximity to the pipe with severe burns on his right foot and left leg.

At the time of the rental of the apartment the tenants claim that it was understood with the landlords that the landlords were to maintain and control the heating apparatus and assume the general repair of the premises, with control reserved to that extent. After the tenants became aware of the danger from the hot pipe, they objected to the landlords who, according to the tenants' deposition, agreed to insulate it.

The court below held that the action of the mother in placing the child on the double bed in the master bedroom close to the radiator pipe, thereby exposing him to the danger of being burned by the pipe, constituted contributory negligence as a matter of law. The Court further held that it could not be said that the landlords should have anticipated the mother's negligence, that her act was the direct and sole proximate cause of the accident, and that the failure of the landlords to make the repairs was a remote cause.

In making this finding, the court below stated that it assumed that in the original rental agreement the landlords had undertaken to keep the apartment in good repair. The

Court further assumed that such an agreement rendered the landlords liable for injuries to the tenants and others caused by a condition existing prior to the lease. The Court also stated that it assumed that the existence of the pipe in the bedroom was a condition of disrepair within the meaning of Section 357, Restatement of the Law of Torts, in which the landlord is held liable for injuries sustained by a tenant and others where the landlord agreed, by a covenant in the lease or otherwise, to keep the property in repair and where the disrepair created an unreasonable risk to persons upon the property which the performance of the landlord's agreement would have prevented.

There is unquestionably evidence of negligence on the part of the mother of the infant plaintiff. We do not consider this question here because it is apparently generally conceded that the negligence of the parent will not be imputed to the child and bar recovery if the suit is brought, as here, on behalf of the infant plaintiff for his own behalf. *Brown v. Schendelman*, 4 *W. W. Harr.* 50, 143 *A.* 42. Defendants in their brief conceded that the case of *Kyne v. Wilmington & Northern R. R. Co.*, 8 *Houst.* 185, 14 *A.* 922, decided in 1888, holding that the contributory negligence of the parent will bar recovery by the child even in a suit by the child, is an anomaly of the law "which has not been overruled because the opportunity has not been squarely presented to any Delaware court". Defendants do not rely on that case to sustain the opinion of the court below. We therefore do not consider it here.

The sole question which we must determine at this time is whether the court below was in error in holding as a matter of law that the negligence of the mother was the proximate cause of the accident and the alleged negligence of the landlords only a remote cause.

Proximate cause is always to be determined on the facts of each case, upon mixed questions of logic, com-

mon sense, justice, policy and precedent. *Island Express v. Frederick*, 5 *W. W. Harr.* 569, 171 *A.* 181. A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury even though such injury would not have happened but for such condition or occasion. *Island Express v. Frederick, supra.* The question of proximate cause is usually a question of fact to be determined by the trier of facts. *Stucker v. American Stores Corp.*, 5 *W. W. Harr.* 594, 171 *A.* 230; *Cooke v. Elk Coach Line*, 7 *W. W. Harr.* 120, 180 *A.* 782. This is so even in cases where there is no serious dispute concerning the material facts if the inferences to be drawn therefrom are reasonably capable of more than one conclusion. *Stucker v. American Stores Corp., supra.* The test is whether or not the negligence of the mother under the circumstances was something which should have been reasonably foreseeable or reasonably anticipated by the landlords. *Szymanska v. Equitable Life Insurance Co.*, 7 *W. W. Harr.* 272, 183 *A.* 309. See *Restatement of the Law of Torts*, Section 447.

The determination of whether the mother's negligence was a proximate cause of the accident poses several questions: Did the negligence of the mother constitute an independent act of negligence or did it follow in unbroken sequence the assumed negligence of the landlords? Could the landlords have foreseen that one of the children of the tenants might come in contact with the pipe and become severely burned thereby? Did the failure of the landlords to foresee this possibility amount to negligence? The landlords knew of the condition of the pipe. They also knew of the presence of infant children in the apartment. According to the parents of the infant plaintiff, the landlords had agreed to remove the condition of which the tenants complained. The arrangement of the apartment, together with the wet condition of the ceiling

of the infant's bedroom, was such that there may have been no other suitable place to put the infant plaintiff. In considering what was the proximate cause of this accident, all these questions must be determined.

■ Under the facts of this case and the surrounding circumstances, we cannot say as a matter of law, as did the court below, that the negligence of the mother was the proximate cause of the accident and that the negligence of the landlords was a remote cause. We think that more than one inference may be drawn from the evidence. Hence the determination of proximate cause is a question of fact for the trier of facts and not for the Court to decide as a matter of law.

The judgment of the Superior Court will be reversed.