# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GMG INSURANCE AGENCY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-07-002 MMJ |
| | ) | |
| MARGOLIS EDELSTEIN, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: February 13, 2023
Decided: April 10, 2023

On Defendant's Motion for Summary Judgment
**GRANTED**

## OPINION

Patrick K. Gibson, Esq. (Argued), Ippoliti Law Group, Wilmington, DE, *Attorney for Plaintiff*

Sally J. Daugherty, Esq., Salmon Ricchezza Singer & Turchi, LLP, Wilmington, DE, George M. Vinci, Jr., Esq. (*pro hac vice*) (Argued), David B. Picker, Esq. (*pro hac vice*), Spector Gadon Rosen Vinci P.C., Philadelphia, PA, *Attorneys for Defendant*

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

This is a legal malpractice case. Plaintiff GMG Insurance Agency

("Plaintiff") is an insurance agency organized in Pennsylvania. Defendant

Margolis Edelstein ("Defendant") is a law firm based in Pennsylvania, with lawyers practicing in Delaware. In February 2017, Lyons Insurance Agency ("Lyons") filed an action against Howard Wilson ("Wilson") and Plaintiff in the Court of Chancery (the "Underlying Litigation").

The Underlying Litigation stemmed from Wilson's employment as an insurance broker. Wilson worked for USI Insurance Services ("USI"), then Lyons, and finally Plaintiff. USI had an injunction against Wilson forbidding Wilson from servicing any clients that moved with him from USI to Lyons. Some of Wilson's former clients at USI—in particular one of Wilson's largest clients, OTG Management, LLC ("OTG")—became clients of Plaintiff. Lyons and Wilson had entered into an employment agreement, which restricted Wilson's ability to compete against Lyons for two years after his termination. Nonetheless, Plaintiff hired Wilson before the two year limitation had expired—allegedly to service his previous clients from his time working at USI.

The Underlying Litigation alleged Wilson was violating his employment agreement with Lyons. The complaint claimed breach of the employment agreement, aiding and abetting breach of contract, tortious interference, unjust enrichment, and civil conspiracy.[1] Plaintiff hired Defendant as its counsel in the

---

[1] *Lyons Ins. Agency, Inc. v. Wilson*, 2018 WL 4677606, at *6–10 (Del. Ch.).

Underlying Litigation. Defendant also represented Wilson as counsel in the Underlying Litigation.

All parties in the Underlying Litigation filed Motions for Summary Judgment. On September 28, 2018, the Court of Chancery issued its opinion.[2] The Court of Chancery concluded that: (1) Wilson breached the employment agreement with respect to his competitive behavior, but not with respect to his use of confidential information;[3] (2) aiding and abetting a breach of contract is not recognized in Delaware;[4] (3) the factual record was not developed enough to determine "whether GMG's actions satisf[ied] the . . . tortious interference requirements," and therefore, the Court permitted the tortious interference claim to move forward;[5] (4) "Wilson's Motion for Summary Judgment on the unjust enrichment account must be granted;"[6] and (5) Lyons' claim for civil conspiracy was waived, and therefore, Wilson's Motion for Summary Judgment on civil conspiracy was granted.[7] Thus, the only count left unresolved after summary judgment was for tortious interference.

Plaintiff, Defendant, Lyons, and Wilson engaged in mediation. The mediator allegedly advised Defendant that he thought Lyons would settle the

---

[2] *Id.* at *1.
[3] *Id.* at *7–8.
[4] *Id.* at *8.
[5] *Id.*
[6] *Id.* at *9.
[7] *Id.*

Underlying Litigation for $600,000. On March 20, 2019, Defendant recommended that Plaintiff offer $600,000 to settle the case. Plaintiff declined.

In April 2019, Plaintiff terminated Defendant. Plaintiff then engaged Smith Katzenstein & Jenkins LLP ("SKJ") to continue the Underlying Litigation. Plaintiff also told Wilson that he needed to obtain separate legal counsel moving forward.

On June 9, 2020, Lyons demanded that Plaintiff pay $750,000 to settle the Underlying Action. Plaintiff rejected Lyons' demand and made no counteroffer.[8] Plaintiff's new attorneys called the demand "laughable."[9]

On December 9, 2020—after Plaintiff had terminated Wilson—Wilson submitted an affidavit (the "Wilson Affidavit"). The Wilson Affidavit recanted Wilson's prior sworn testimony. The Wilson Affidavit acknowledged that Wilson, Plaintiff, and OTG (Wilson's former client) had conspired to move OTG's business from Lyons to Plaintiff, and for Plaintiff to hire Wilson. Thus, the Wilson Affidavit threatened Plaintiff's legal position in the Underlying Litigation. Plaintiff then agreed to settle the Underlying Litigation with Lyons for $1.2 million.

---

[8] Pls.' Resps. and Objs. to Def.'s First Req. for Admis. ¶¶ 14–17.
[9] *Id.* ¶ 17.

The Underlying Litigation continued only against Wilson. The Court of Chancery awarded $1,011,541[10] (1.5 times the value of "the annualized amount of commissions generated by that portion of the 'Book of Business' moved to the new employer"[11]) plus prejudgment interest and fifty percent of reasonable legal fees in damages against Wilson.[12]

On July 1, 2021, Plaintiff filed the instant action alleging legal malpractice (Count I) and liability for the actions of Defendant's agents through *respondeat superior* (Count II).[13] Defendant filed the instant Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[14] All facts are viewed in a light most favorable to the non-moving party.[15] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[16] When the facts permit a reasonable person to draw

---

[10] *See Lyons Ins. Agency Inc. v. Wilson*, 2021 WL 1696741, at *6 (Del. Ch.) (noting the Court could not reproduce the calculation leading to $1,011,541).
[11] *Id.* at *3.
[12] *Id.* at *7.
[13] Compl. ¶¶ 114–25.
[14] Super. Ct. Civ. R. 56(c).
[15] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).
[16] Super. Ct. Civ. R. 56(c).

only one inference, the question becomes one for decision as a matter of law.[17]  If the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[18]

## ANALYSIS

### *Legal Malpractice*

"Under Delaware law, a valid action for legal malpractice must pass the following three-prong test: (1) employment of the attorney; (2) neglect of a professional duty by the attorney; and (3) loss resulting from the attorney's neglect."[19]  To establish the "loss element, a plaintiff must demonstrate that, but for the attorney's neglect, the plaintiff would have been successful."[20]

Plaintiff alleges that Defendant committed legal malpractice in its representation of Plaintiff in the Underlying Litigation.  Plaintiff claims Defendant was not properly equipped to handle the Underlying Litigation.  Plaintiff alleges that Defendant failed to develop the factual record by deposing various witnesses.  Plaintiff claims Defendant failed to provide factual or legal analysis of the elements of tortious interference in its Motion for Summary Judgment during the

---

[17] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[19] *Arunachalam v. Pazuniak*, 2017 WL 3978000, at *8 (D. Del.) (citing *Oakes v. Clark*, 2012 WL 5392139, at *3 (Del. Super.), *aff'd*, 69 A.3d 371 (Del. 2013)).
[20] *Id.*

6

Underlying Litigation. Plaintiff alleges that if Defendant had properly developed the record, and properly briefed and argued the Motion for Summary Judgment, then the tortious interference claim of the Underlying Litigation would not have survived summary judgment.

During oral argument on the instant motion, Plaintiff stated two reasons why Plaintiff settled the Underlying Litigation: (1) because the Wilson Affidavit "represented a huge departure from [] Wilson's prior [sworn] testimony," and it was Wilson's prior sworn testimony that Plaintiff intended to rely upon during trial; and (2) because the Court of Chancery denied the request for a sixty-day continuance to allow Plaintiff to attempt to rebut the Wilson Affidavit. [21]

When the Court asked Plaintiff what evidence demonstrated that it was reasonably foreseeable that Wilson would change his prior sworn testimony, Plaintiff did not directly answer the question. Rather, Plaintiff contended that the Wilson Affidavit was reasonably foreseeable, but not anticipated.[22] Plaintiff's counsel contended that the changing of witness testimony was reasonably foreseeable because the changing of witness testimony is always a possibility.[23] Plaintiff was unable to identify any concrete evidence, or even any inference, that

---

[21] Jan. 4 Hr'g Tr. 32:9–33:22.
[22] *Id.* at 29:23–30:17.
[23] *Id.* at 30:18–31:3. The Court notes that simply because something is possible, does not mean it is reasonably foreseeable.

would have given Defendant a reason to believe that Wilson was more likely than any other witness to change his prior sworn testimony.

Plaintiff contends that Defendant should have obtained dismissal, through summary judgment, of the Underlying Litigation's tortious interference claim. "Under Delaware law, the elements of a claim for tortious interference with a contract are: '(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury.'"[24] The Delaware Supreme Court has outlined seven factors to help determine whether *intentional* interference with a contract occurred: (1) "the nature of the actor's conduct;" (2) "the actor's motive;" (3) "the interests of the other with which the actor's conduct interferes;" (4) "the interests sought to be advanced by the actor;" (5) "the social interests in protecting the freedom of an action of the actor and the contractual interests of the other;" (6) "the proximity or remoteness of the actor's conduct to the interference;" and (7) "the relations between the parties."[25]

Plaintiff alleges that Defendant failed to develop the factual record to support dismissal of the tortious interference claim.[26] Plaintiff alleges that if

---

[24] *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)) (emphasis added by Delaware Supreme Court).
[25] *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (quoting Restatement (Second) of Torts § 767 (1979)).
[26] Compl. ¶ 50; *see also* Jan. 4 Hr'g Tr. 27:22–28:13.

Defendant had conducted an additional deposition of OTG's general counsel, and inquired whether Plaintiff sought legal advice before hiring Wilson, the tortious interference claim would have been dismissed.[27]  Plaintiff alleges the additional factual record would have demonstrated to the Court of Chancery that Plaintiff lacked the requisite intent for a tortious interference claim to continue past summary judgment.[28]  Plaintiff contends that if the tortious interference claim never made it past summary judgment, then Plaintiff "would not have been in a position to be negatively affected by the Wilson Affidavit."[29]

### *Superseding Cause Doctrine*

"A superseding cause is 'a later cause of independent origin that was not foreseeable.'"[30]  "In order to break the causal chain, . . . the intervening act or event itself must have been neither anticipated nor reasonably foreseeable by the original tortfeasor."[31]  "[A] superseding cause is, by definition, the sole proximate cause of an injury."[32]  "The superseding cause doctrine . . . is concerned with how far legal responsibility should extend."[33]

> A prior and remote cause cannot be made the basis of an
> action if such remote cause did nothing more than furnish

---

[27] *Id.* ¶¶ 51–57.
[28] *Id.* ¶¶ 56–57, 63–65.
[29] Pl. Opp'n Br. 11.
[30] *In re Bocchino*, 794 F.3d 376, 383 (3d Cir. 2015) (quoting *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996)).
[31] *Duphily v. Delaware Elec. Co-op., Inc.*, 662 A.2d 821, 829 (Del. 1995).
[32] *Id.* at 833.
[33] *Alaska Bulk Carriers, Inc. v. Goodall Rubber Co.*, 1990 WL 82361, at *3 (D. Del.).

the condition or give rise to the occasion by which the injury was made possible if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury even though such injury would not have happened but for such condition or occasion.[34]

Deciding superseding causation is usually a jury question, but "a court may decide the issue as a matter of law if there can be 'no reasonable difference of opinion as to the conclusion to be reached on the question of whether an intervening cause is abnormal, unforeseeable, or extraordinarily negligent . . . .'"[35]

Defendant argues the Wilson Affidavit is a superseding cause of the Underlying Litigation settlement. Defendant contends that but for Wilson changing his sworn testimony twenty months after Plaintiff terminated Defendant as counsel, the Underlying Litigation would never have settled.

The Court finds the evidence fails to support Plaintiff's legal malpractice claim. There is no reason to conclude that Defendant's actions breached the standard of care in developing the factual record, or when presenting the Underlying Litigation Motion for Summary Judgment on the tortious interference issue. The Court of Chancery granted summary judgment in favor of Plaintiff on the issues of aiding and abetting, unjust enrichment, and civil conspiracy.[36] This

---

[34] *McKeon v. Goldstein*, 164 A.2d 260, 262 (Del. 1960).
[35] *Sims v. Stanley*, 2008 WL 853538, at *2 (Del. 2008) (quoting *Duphily v. Delaware Electric Co–Op., Inc.* 662 A.2d 821, 831 (Del.1995)).
[36] *Lyons Ins. Agency, Inc. v. Wilson*, 2018 WL 4677606, at *7–9 (Del. Ch.).

10

ruling alone evidences the competence and diligent representation of Plaintiff by Defendant prior to termination.

The Court finds the undisputed evidence demonstrates that settlement would not have occurred at the time it did, or in the agreed amount, but for the Wilson Affidavit. The evidence on the record does not show that Defendant could reasonably foresee—twenty months before the execution of the Wilson Affidavit—that Wilson would perjure himself by changing his prior sworn testimony with the Wilson Affidavit. [37] Therefore, the Court finds the Wilson Affidavit was a superseding cause that broke the causal chain leading to the settlement of the Underlying Litigation.

## CONCLUSION

The Court finds the evidence fails to support Plaintiff's legal malpractice claim. The Court finds that there was no reason to conclude Defendant breached the standard of care when developing the factual record, or when presenting the

---

[37] Plaintiff claims that Defendant was aware Wilson was not a trustworthy individual, making the Wilson Affidavit a possibility during the course of litigation. The only evidence offered to demonstrate Defendant was aware of Wilson's "untrustworthiness" is an email exchange between Plaintiff and SKJ (an email exchange without Defendant's participation stating: "[Wilson] is very capable of lying.") from around the time Plaintiff terminated Defendant as counsel. This argument is unpersuasive. Even if Defendant knew of Wilson's untrustworthiness, this evidence would not demonstrate that it was reasonably foreseeable that Wilson would later perjure himself by changing his sworn testimony. In fact, the argument could be made that an untrustworthy person might be less likely to alter their testimony if it were untrue. Simply because an outcome is possible in litigation, it does not mean it is reasonably foreseeable. In this case, no evidence demonstrates Defendant would have had any reason to believe Wilson would perjure himself.

11

Underlying Litigation Motion for Summary Judgment on the tortious interference issue.  The Court finds the Wilson Affidavit was a superseding cause of Plaintiff's alleged loss.  Therefore, Defendant's Motion for Summary Judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**

_____*/s/ Mary M. Johnston*_____
The Honorable Mary M. Johnston