Lashanda SPENCER, As Administratrix of the Estate of Muriel Stewart, and Lashanda Spencer, Individually, Plaintiff Below, Appellant,

v.

John GOODILL, M.D., Defendant Below, Appellee.

No. 411, 2010.

Supreme Court of Delaware.

Submitted: Jan. 26, 2011.
Decided: April 6, 2011.

Kenneth M. Roseman, Esquire, (argued) of Kenneth Roseman, PA., Wilmington, Delaware, for Appellant.

Bradley J. Goewert, Esquire, (argued) and Lorenza A. Wolhar, Esquire, of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal, we consider the extent to which a plaintiff must prove causation to succeed in a medical negligence action based on lack of informed consent. Delaware's informed consent statute codifies a health care provider's duty to provide a patient with certain information about the alternatives and risks of a proposed treatment. A health care provider breaches that duty if it fails to provide information that would be material to the patient's decision to undergo the proposed treatment. If the treatment is not successful, and the complication is one that should have been but was not disclosed, the patient has suffered damages. The question is whether the patient must prove not only that the complication was a material, undisclosed risk of the treatment, but also that a reasonable person, if told about the risk, would have declined the treatment. We conclude that proof of what a reasonable person would have done is required to establish causation. Accordingly, we affirm.

### Factual and Procedural Background

In July 2007, Dr. John Goodill performed a bronchoscopy with a transbronchial biopsy on Muriel Stewart. Goodill did not recall exactly what he told Stewart about the risks of the procedure. Based on his usual practice, however, he testified that he would have described the likely complications as bleeding, pneumothorax, and, at worst, use of a ventilator for a short period of time. Stewart was not informed that there was a one in 1000 risk of death, which is a magnitude of risk 500 times greater than the risk of death from general anesthesia. Unfortunately, Stewart died as a result of the procedure. Lashanda Spencer, individually and as administratrix of Stewart's estate, filed this action against Goodill. She claimed that Goodill violated 18 *Del. C.* § 6852, the informed consent statute, by not telling Stewart that there was a risk of death. After a three day trial, the jury found that Spencer failed to prove causation, and the Superior Court entered judgment in favor of Goodill. This appeal followed.

### Discussion

■ The informed consent statute was enacted in 1976, as part of a "major modifi-

cation[ ] to [the] legal system as it relates to health care malpractice claims...."[1] It provides:

> (a) No recovery of damages based upon a lack of informed consent shall be allowed in any action for medical negligence unless:
>
> (1) The injury alleged involved a nonemergency treatment, procedure or surgery; and
>
> (2) The injured party proved by a preponderance of the evidence that the health care provider did not supply information regarding such treatment ... to the extent customarily given to patients ... by other licensed health care providers in the same or similar field of medicine....
>
> (b) In any action for medical negligence, in addition to other defenses provided by law, it shall be a defense [to an informed consent claim] that:
>
> (1) A person of ordinary intelligence ... could reasonably be expected to appreciate ... hazards inherent in such treatment;
>
> (2) The injured party assured the health care provider he or she would undergo the treatment regardless of the risk involved;
>
> (3) It was reasonable for the health care provider to limit the extent of his or her disclosures of the risks of the treatment ... because further disclosure could be expected to affect ... the injured party's condition....[2]

The term "informed consent" means:

> [T]he consent ... given after the health care provider has informed the patient ... of the nature of the proposed procedure ... and of the risks and alternatives to treatment ... which a reasonable patient would consider material to the decision whether or not to undergo the treatment....[3]

■ The parties agree that, to prevail on an informed consent claim, plaintiff must prove that: 1) the health care provider failed to provide information about risks and alternatives customarily given to patients; 2) a reasonable person would have considered the undisclosed information material; and 3) plaintiff was injured by a complication that should have been disclosed. The sole issue on appeal is whether plaintiff also must prove that a reasonable person would have declined the procedure if that person had been properly informed of the risks and alternatives. Because this is a question of law, our standard of review is *de novo*.[4]

■ It is settled in Delaware that the failure to obtain informed consent is a form of medical malpractice.[5] Like other malpractice claims, an informed consent claim is one for negligence.[6] In general, to prove negligence one must establish that defendant breached a duty owed to plaintiff and that defendant's act or omission proximately caused plaintiff's injury.[7] Proximate cause is defined as, "that direct cause without which the [injury] would not have occurred."[8] Thus, unless the in-

1.  60 Del. Laws 1976, ch.373, Preamble.

2.  18 *Del. C.* § 6852.

3.  18 *Del. C.* § 6801(6).

4.  *Town of Cheswold v. Vann*, 9 A.3d 467 (Del. 2010).

5.  *Patten v. Freedman*, 1989 WL 64116 at *3 (Del.Super.), *aff'd*. 1989 WL 154716 (Del. Supr.); *Brzoska v. Olson*, 668 A.2d 1355, 1366 (Del.1995).

6.  *Ibid.*

7.  *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991).

8.  *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del.1965).

formed consent statute modifies the common law, plaintiff would have to prove that defendant's failure to obtain informed consent was a proximate cause of plaintiff's injury. Stated another way, plaintiff would have to prove that a reasonable person would not have undergone the medical treatment if properly informed of the risks and alternatives.

Spencer argues that the informed consent statute has eliminated the need to establish proximate cause. She bases her argument on the plain language of the statute, which does not include any such requirement. In addition, Spencer relies on this Court's decisions in *Barriocanal v. Gibbs*,[9] and *Himes v. Gabriel*,[10] and Superior Court Civil Pattern Jury Instruction § 7.2, as support for her position. Spencer's contentions do not bear scrutiny.

■ One of the basic rules of statutory construction is that, "if [a] statute is unambiguous, there is no room for interpretation, and the plain meaning of the words controls."[11] As Spencer notes, the informed consent statute only requires a plaintiff to establish that: 1) the doctor breached the standard of care by failing to provide information customarily given to patients about the procedure, the risks, and the alternatives; and 2) a reasonable patient would consider that information material to his or her decision. Since the statute is unambiguous, she argues that a causation requirement should not be read into it.

There are two problems with this argument. First, it "puts the rabbit in the hat" by assuming that the informed consent statute sets forth all the elements of such a claim. With that assumption, it would follow that the statute's failure to include any causation requirement means that there is none. But the informed consent statute does not begin by saying something like, "In an action based on lack of informed consent, plaintiff must show. . . ." Rather, it says, "No recovery of damages based on lack of informed consent shall be allowed in any action for medical negligence unless. . . ." The statute then specifies the health care provider's duty and provides several defenses. So, depending on how you read the statute, the "plain language" could mean either that the requirement of proximate cause has been eliminated, *sub silentio*, or that the statute does not address causation because it is not delineating the elements of an informed consent claim. The latter interpretation makes more sense, as one would expect that a significant change in the common law elements of negligence would be express, not implied.

■ If there were any doubt about the proper construction of the informed consent statute, that doubt is resolved by reference to the entire chapter in which it is found. The informed consent statute was enacted as part of a chapter designed to manage the then-burgeoning number of medical malpractice claims.[12] Statutes are "passed by the General Assembly as a whole and not in parts or sections. Consequently, each part or section should be read in light of every other part or section to produce an harmonious whole."[13] Chapter 68, Health Care Medical Negligence Insurance and Litigation, restricts a patient's ability to recover damages for

9. 697 A.2d 1169 (Del.1997).

10. 2009 WL 1090061 (Del.Supr.).

11. *Rubick v. Security Instrument Corp.*, 766 A.2d 15, 18 (Del.2000).

12. 60 Del. Laws 1976, ch.373, Preamble.

13. *Coastal Barge Corp. v. Coastal Zone Indus. Control Board*, 492 A.2d 1242, 1245 (Del. 1985).

malpractice by, for example: 1) requiring plaintiffs to file, with their complaints, affidavits of merit signed by an expert witness;[14] 2) limiting the recovery of punitive damages;[15] and 3) limiting the ability to toll the statute of limitations for unknowable injuries.[16] It would be inconsistent with the overall purpose of Chapter 68 to read the informed consent statute as having expanded a plaintiff's ability to recover damages by eliminating the need to prove proximate cause. By contrast, if nothing is read into, or out of, the informed consent statute, it fits the overall scheme of Chapter 68 because it defines and limits the extent of a health care provider's duty to obtain informed consent and it establishes defenses in addition to those available at common law.

Spencer's remaining arguments are unpersuasive. Her reliance on *Barriocanal* is misplaced, because causation was not an issue in that case. The trial court had excluded an expert opinion on standard of care. The expert would have testified that the surgeon should have informed the patient that: 1) he had not performed aneurysm surgery recently; 2) because it was a holiday, the hospital would be thinly staffed; and 3) other, nearby hospitals specialized in that type of surgery. In considering this evidentiary ruling, the Court explained that, "section 6852 requires a plaintiff to produce both evidence of the standard of care ... and evidence of whether the health care provider met that standard...."[17] The expert's opinion would have shown that the surgeon's failure to disclose the facts listed above "fell below the applicable standard of care re-quired to obtain informed consent."[18] Thus, *Barriocanal* held that it was error for the trial court to exclude the expert evidence.

Causation was not an issue in *Himes,* either. After a defense verdict, plaintiff appealed, arguing that "the weight of the evidence [did] not support a finding that informed consent was obtained from [the patient]...."[19] Plaintiff read the informed consent Civil Pattern Jury Instruction to require that a doctor tell the patient all alternatives to the proposed procedure, regardless of whether those alternatives were appropriate under the circumstances. This Court rejected plaintiff's argument, noting that the informed consent statute only requires disclosure of alternative treatments *"to the extent customarily given to patients ... by other licensed health care providers ...."*[20] The doctor in *Himes* failed to tell the patient that staging the procedures was an option, but the evidence showed that the patient was not a candidate for staging. Given those facts, the jury had a basis to conclude that the doctor had no duty to inform his patient about staging because it was not a viable alternative.

Finally, Civil Pattern Jury Instruction 7.2A provides, in relevant part:

> To prevail on [an informed consent] claim, [plaintiff's name] must prove by a preponderance of the evidence: (1) that before the procedure, [defendant's name] failed to tell [him/her] about certain risks of the procedure or alternatives to it; and (2) that a reasonable patient would have considered

14.  18 *Del. C.* § 6853.

15.  18 *Del. C.* § 6855.

16.  18 *Del. C.* § 6856.

17.  *Barriocanal v. Gibbs,* 697 A.2d at 1172.

18.  *Ibid.*

19.  *Himes,* 2009 WL 1090061 at *1.

20.  *Id.* at *2. (Emphasis in original. Internal quotations omitted.).

this information to be important in deciding whether to have the procedure; and (3) that [plaintiff's name] had suffered injury as a proximate result of the procedure.[21]

Spencer argues that the Court should recognize the pattern jury instruction as being a correct statement of the elements of an informed consent claim. This Court has noted that the pattern jury instructions "reflect the collective effort of several distinguished jurists and practicing attorneys" and are a "valuable resource for the bench and bar.... [22]" But the instructions are always subject to review, and the Court has not previously considered the accuracy of this instruction. Thus, the pattern instruction does not provide independent authority for Spencer's position.

The Court assumes that the pattern jury instruction will be revised in accordance with this decision. In that context, it is important to note two matters that were not addressed by either party. First, the trial court decided that proximate cause should be decided objectively, by considering what a reasonable person in plaintiff's circumstances would have done. We agree, for the reasons stated by the Superior Court. Second, the question of whether a reasonable person would have proceeded with the treatment, if given all required information, is not necessarily answered by a simple "Yes" or "No." For example, a patient could reasonably decide to seek a second opinion, or find another doctor to perform the procedure, or wait until a better equipped hospital is available. In any of those situations, the patient might ultimately undergo the same procedure, with the same doctor. Nonetheless, the actual treatment that resulted in the patient's injury, and that formed the basis for the claim, would not have occurred. Accordingly, the jury should be allowed to consider all of the options that a reasonable person would have had in deciding proximate cause.

### Conclusion

Based on the foregoing, the judgment of the Superior Court is affirmed.

---

21. DEL.P.J.I.Civ. § 7.2A (2000).

22. *Russell v. K–Mart Corp.*, 761 A.2d 1, 4 (Del.2000).